[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs in this matter appeal from a decision of the defendant Inland-Wetlands Commission of the Town of Oxford (hereinafter referred to as "the Commission"), denying their application to build a residence on their 2.13 acre tract of land located off Moose Hill Road in the Town of Oxford. The Commissioner of Environmental Protection of the State of Connecticut was joined as a party defendant under the provisions of Sec.22a-43 (a) C.G.S. but was not a party to any of the proceedings before the Commission up to and including the denial of the plaintiffs application.
It is the plaintiffs claim that on July 6, 1999 the plaintiffs made application to the Commission to construct a two-bedroom dwelling and after several meetings during which tile Commission heard the plaintiffs and others, on October 25, 1999, the Commission voted to deny the application. The plaintiffs claim that the denial by the Commission was unlawful, arbitrary, and in abuse of their discretion, and further alleged that there was not substantial evidence in the record to support the denial, but rather that the evidence before the Commission satisfied all the required factors for consideration under Sec. 22-41 (a) C.G.S. and regulations of the Town of Oxford. (The complaint in this regard sets out the City of Ansonia but this obviously was a scrivener's error.)
Initially the court notes that the plaintiffs claim to be aggrieved parties and counsel have so stipulated to that effect thus conferring standing on the plaintiffs to prosecute this appeal. An appeal from a determination of a municipal agency requires the court to examine the record submitted to determine whether there was an adequate basis for the Commission's decision. Gagnon v. Inland Wetlands and WatercoursesCommission, 213 Conn. 604, 611. The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. Huck v. Inland Wetlands and Watercourses Agency,203 Conn. 525, 540. The evidence to support any such reason must be substantial but the credibility of witnesses and the determination of factual issues are matters within the province of the agency. Feinson v.Conservation Commission, 180 Conn. 421, 427. But this court may not substitute its judgment for that of the agency. Lawrence v. Kozlawski,171 Conn. 705, 708. CT Page 4978
The application of the plaintiffs to the Commission in evidence as Exhibit 43, Return of Record, sets forth the proposal of the plaintiffs in connection with this piece of property with the Commission denial of the application dated October 25, 1999 and appended thereto a recitation of the reasons for the denial of the application. The text of the Commission's reasons are as follows:
 "Application for July 6, 1999 site plan denial by reason of:
 After many inspections by individual commission members, and consideration of applicant's submitted material, the Commission had reservations concerning the suitability of the site because of the extremely wet conditions.
 In fairness to you, the applicant, the Commission voted to retain ESM Assocs of Danbury, to render their findings. Their October 12, 1999 report is incorporated in your file. These findings were reviewed, and found to reinforce the Commissioners' opinions.
 Given the obvious and significant negative features of the site, including, but not limited to, the flat topography and the wetlands on the proposed site, the fill of wetlands proposed can be expected to exacerbate flooding on and off the property.
 No conservation easement nor compensation for the destroyed wetlands were proposed.
 The July 6, 1999 siteplan necessitates both driveway and septic to cross substantial wetlands.
 Given the presence of ponded water even in upland areas, grading outside of wetlands is likely to also exacerbate flooding both at site and to adjacent properties.
 Curtain drains have significant potential for not functioning for periods of time, especially during heavy rains, and/or with snow cover."
The plaintiffs complain that no substantial evidence supports these conclusions nor was there any evidence of any adverse or even significant impact upon the wetlands caused by the plaintiffs proposal. It is further CT Page 4979 the plaintiffs claim that the Property described in the application was approved as a building lot, Ex. 29, Return of Record, and a proposed sewage system was approved by the appropriate authority as well. Exhibit 28, Return of Record. The plaintiffs claim that all that remains for the plaintiffs to utilize their property as they propose is the approval of the application for a wetlands permit.
The court viewed the property on March 22, 2002 together with counsel. Exhibit 17, a map of the property, indicates the extent of the delineated wetlands on the plaintiffs lot. The lot size is 2.13 acres, or 92, 781 square feet. Exhibit 32, Return of Record, reflects that of this property,0.76 acre is wetlands and the construction contemplated would permanently affect 267 square feet of the wetlands. The court observed that the terrain of the parcel is very flat with the exception of the area where the dwelling is proposed to be constructed which is slightly elevated. The court also noticed areas of standing water and dampness under foot. Exhibit 39, Return of Record. The report of the soil engineers hired by the Commission noted a dense layer of compact soil which retarded infiltration and contributed to surface wetness. This report also concluded that curtain drains as proposed by the plaintiffs would be unsuitable due to the evenness of the terrain or lack of slope. This would contribute to run-off into adjacent wetlands. The engineers also noted that this type of soil has a tendency to be damp due to moderate permeability with the under soil having very slow permeability. Further, the effect on surrounding wetlands on and off the property could be potentially harmful with the use of pesticides and fertilizer customarily utilized by homeowners for lawn installation and maintenance.
In reviewing the record it is apparent that the Commission considered the effect of the proposed construction on the general area of the wetlands on many occasions. There were individual inspections of commission members, Return of Record Exhibit 41, October 25, 1999 and wetlands enforcement officer October 14, 1999. Other dates of inspections and discussions of the appropriateness of granting the permit are found in Exhibits 40, 36, 34, 32, 31, 25 and 20, Return of record. Knowledge obtained through personal observations of the locus may properly be considered by the agency in arriving at reasons given for the denial of an application. Huck v. Inland Wetlands and Watercourses Agency,203 Conn. 525, 547.
The court concludes that the Commission in this instance spent much time and devoted much consideration to the conditions surrounding this application and the impact upon the delineated wetlands and land proximate to it and concluded that the proposed construction would negatively affect those areas. In the court's view, the record discloses substantial CT Page 4980 evidence to support the agency's decision.
Accordingly, the appeal is denied.
 ___________________ George W. Ripley II Judge Trial Referee